**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x

In re:                                                                                      Chapter 7

MARK STEVEN ACKER,                                               Case No. 22-22359 (SHL)

                                             Debtor.
-----------------------------------------------------------------x
DAVID ACKER and KAREN ACKER,

                                             Plaintiffs,

                        v.                                                          Adv. Pro. No. 22-07038 (SHL)

MARK STEVEN ACKER,

                                             Defendant.
-----------------------------------------------------------------x

<u>**MEMORANDUM OF DECISION**</u>


**A P P E A R A N C E S :**


**DAVIDOFF HUTCHER & CITRON LLP**
*Counsel for Plaintiffs David Acker and Karen Acker*
120 Bloomingdale Road, Suite 100
White Plains, New York 10605
By:     Robert L. Rattet, Esq.
        Jonathan S. Pasternak, Esq.

**SCHWARTZ SLADKUS REICH GREENBERG ATLAS LLP**
*Counsel for Defendant Mark Steven Acker*
444 Madison Avenue
New York, New York 10022
By:     Stephen H. Orel, Esq.

**SEAN H. LANE**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is a motion for partial summary judgment filed by David Acker and Karen Acker (together, the "Plaintiffs") against Mark Acker (the "Defendant") in the above-captioned adversary proceeding. *See Motion for Partial Summary Judgment Against Defendant Mark Steven Acker* [ECF No. 20] (the "Motion").[1]   The Motion requests summary judgment on the first two causes of action in the Plaintiffs' complaint [ECF No. 1] (the "Complaint").   The first cause of action seeks to have the Plaintiffs' claim against the Defendant held nondischargeable under Section 523(a)(6) of the Bankruptcy Code for willful and malicious injury. *See* Compl. ¶¶ 12-18.   The second cause of action seeks to have the Plaintiffs' claim held nondischargeable under Section 523(a)(4) of the Bankruptcy Code due to fraud or defalcation in a fiduciary capacity. *See id.* ¶¶ 19-23.   The Plaintiffs argue that findings of fact and conclusions of law from a prior Florida state court judgment against the Defendant have collateral estoppel effect here and are enough to establish the nondischargeability of the Plaintiffs' claims in this bankruptcy. *See* Mot. ¶¶ 14-16; *Final Judgment*, attached as Exh. B to the Compl. (the "Judgment").   The Defendant disagrees.   He argues that the Judgment does not have preclusive effect and, in the alternative, that the findings and conclusions in the Judgment do not rise to the level necessary to hold the claim nondischargeable.   For the reasons set forth below, the Court grants summary judgment on the first cause of action in the Complaint and denies summary judgment on the second.

---

[1]       Unless otherwise specified, references to the Case Management/Electronic Case Filing ("ECF") docket are to this adversary proceeding.

2

## BACKGROUND

The following facts are not in dispute.  The Plaintiffs and the Defendant are siblings and co-personal representatives of the Estate of Stanley Acker (the "Estate")—their deceased father—and the related Irrevocable Life Insurance Trust of Stanley Acker, Guarantor, dated October 1, 1987 (the "Trust").  *See Decl. of Karen Acker of Undisputed Facts* ¶¶ 1-3, attached as Exh. C to the Motion (the "Acker Declaration").  In this capacity, each of the parties has fiduciary duties to their co-fiduciaries and to the beneficiaries of the Estate.  *See* Judgment at 2.

For more than ten years, the Plaintiffs and the Defendant have engaged in continuous legal warfare regarding the Estate and the Trust, which has delayed the final disposition of the Estate.  *Id.*; *see also* Acker Decl. ¶¶ 1-3.  Certain of the cases involved in this litigation are pending in Palm Beach County, Florida (collectively, the "Florida Litigation").  *See* Acker Decl. ¶¶ 1-3.  In November 2010, the parties entered into a settlement agreement to resolve the Florida Litigation.  *See Settlement Agreement*, attached as Exh. A to the Compl. (the "Settlement Agreement").  But the Settlement Agreement did not achieve its desired effect, and the Florida Litigation continued.

In February 2020, the Circuit Court of the Fifteenth Judicial Circuit for Palm Beach County, Florida (the "Florida Court") issued a final judgment against the Defendant finding, among other things, that the Defendant was in material breach of the Settlement Agreement.  *See* Judgment at 3, 6.  The Florida Court noted that the Settlement Agreement "was approved by Order of this Court . . . and is a binding contract under Florida law, entered into by the parties willingly, knowingly and voluntarily."  Judgment at 2.  The Judgment specifically stated that the Defendant:

> failed to abide by multiple terms of the [Settlement Agreement] by taking actions including but not limited to:

a) Interference with the IRS and its Audit, including but not limited to seeking to have a higher tax burden imposed upon the Estate, which led to the imposition of significant additional and unnecessary legal and other professional fees upon the Estate;

b) [Defendant's] interference in the Accounting Proceeding;[2]

c) Repeatedly attempting to unilaterally remove the court appointed fiduciary;

d) Objecting to, and/or blocking payment of administrative expenses, including professional fees incurred in connection with the administration of the Estate;

e) Refusal to abide by the terms of the [Settlement Agreement] requiring that all future accounting be waived;

f) Contacting the IRS and making false allegations of a conspiracy;

g) Failing to abide by the duties imposed upon fiduciaries, such as [Defendant's] [] duties to (i) carry out the decedent's intent; (ii) to administer and close the estate in the most efficient manner possible; (iii) to respect and abide, and not hinder, the majority decisions made by his co-fiduciaries; and (iv) to act, at all times, in the best interests of the Estate; and

h) By acting in his own personal interests instead of acting in the best interests of the Estate.

Acker Decl. ¶ 4; Judgment at 6-7. The Judgment held that the Defendant had breached his fiduciary duties to the Estate, his co-fiduciaries and his co-beneficiaries. *See* Judgment at 8. In reaching its findings of fact and conclusions of law, the Florida Court credited the testimony of an expert witness over the testimony of the Defendant, stating that the expert's "testimony is credible . . . . [while Defendant's] testimony was not credible and from his actions it is clear he did not adhere to Florida law regarding personal representatives and trustees." Acker Decl. ¶ 4;

---

[2]     The Judgment notes that the "Accounting Proceeding" is an accounting action brought by the Decedent's second wife against the Trust. *See* Judgment at 2; *see also* Settlement Agreement at 1.

Judgment at 6.[3]  The Florida Court also applied the Inequitable Conduct Doctrine under Florida law to award damages in favor of the Plaintiffs in the amount of $960,000.00 for attorneys' fees that had accrued over the course of the various litigations between the parties.  As the Florida Court explained, "[a]s applied by the Florida Supreme Court, [the Inequitable Conduct Doctrine] permits an award of attorneys' fees and costs against a party personally where they acted egregiously, in bad faith, vexatious[ly], wantonly, or for oppressive reasons."  Judgment at 8. The damages awarded were to "be surcharged from [the Defendant's] share of the Estate or Marital Trust or otherwise imposed against him personally . . . ."  Judgment at 9.

In June 2022, the Defendant filed this bankruptcy case under Chapter 11 of the Bankruptcy Code.  The Plaintiffs subsequently filed this adversary proceeding against the Defendant seeking to find certain of the Defendants' debts nondischargeable.  The first cause of action in the Complaint sought to find the $960,000.00 in damages awarded to the Plaintiffs against the Defendant in the Judgment to be nondischargeable under Section 523(a)(6) as a debt resulting from willful and malicious injury.  The second cause of action in the Complaint sought to find the same damages non-dischargeable under Section 523(a)(4) as a debt stemming from fraud or defalcation in a fiduciary capacity.  The Plaintiffs now seek summary judgment on these two causes of action, relying solely on the findings of fact and the conclusions of law in the Judgment.

---

[3]    In the Judgment, the Florida Court noted that it had "considered the intelligence, frankness, credibility, character, and competence of each witness, while being cognizant of the interests of each party in the outcome of the case."  Judgment at 1.

5

## DISCUSSION

A. **Legal Standard for Summary Judgment**

Federal Rule of Civil Procedure 56, made applicable by Rule 7056 of the Federal Rules of Bankruptcy Procedure, governs the granting of summary judgment. "[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the [movant] is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56). If "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)).

"A fact is material when it might affect the outcome of the suit under governing law." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007). But "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "The Court may also grant some but not all of the relief requested in a summary judgment motion if it finds disputed issues of fact as to some of the issues presented." *In re Residential Capital, LLC*, 533 B.R. 379, 395 (Bankr. S.D.N.Y. 2015) (citing Fed. R. Civ. P. 56(g)).

"The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish [the movant's] right to judgment as a matter of law." *Rodriguez v. City of New York*, 72 F.3d 1051, 1060–61 (2d Cir. 1995). The showing necessary to satisfy this initial burden depends on which side bears the

burden of proof on a particular issue at trial. *See Read Prop. Grp. LLC v. Hamilton Ins. Co.*, 2018 WL 1582291, at *5 (E.D.N.Y. Mar. 30, 2018). When the movant has the burden of proof at trial, its own submissions in support of the motion must entitle it to judgment as a matter of law. *See Albee Tomato, Inc. v. A.B. Shalom Produce Corp.*, 155 F.3d 612, 618 (2d Cir. 1998). When the burden of proof falls on the nonmoving party, it is generally sufficient for the movant to point to a lack of evidence on an essential element of the nonmovant's claim. *See Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009). To avoid summary judgment, the nonmoving party must then come forward with evidence sufficient to raise a genuine issue of fact for trial. *See id.*

"In deciding whether material factual issues exist, all ambiguities must be resolved and all reasonable inferences must be drawn in favor of the nonmoving party." *In re Ampal-Am. Israel Corp.*, 2015 WL 5176395, at *10 (Bankr. S.D.N.Y. Sept. 2, 2015) (citing *Matsushita*, 475 U.S. at 587). But "the nonmoving party may not rely on conclusory allegations or unsubstantiated speculation[,]" *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001), and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

## B. <u>Collateral Estoppel</u>

The Plaintiffs base their request for summary judgment entirely on the findings of fact and conclusions of law in the Judgment, which they argue should be given collateral estoppel effect here. The Defendant argues that collateral estoppel is inapplicable because there is a lack of identity of the parties in the Florida Litigation and in this adversary proceeding. As explained below, however, the Court finds that there is indeed an identity of parties, as exemplified by the

language of the Judgment itself and that the Judgment is final and not subject to collateral attack

in this Court.

The doctrine of collateral estoppel applies in an adversary proceeding that seeks to hold a

debt nondischargeable. *See Wharton v. Shiver (In re Shiver)*, 396 B.R. 110, 119 (Bankr.

S.D.N.Y. 2008) (citing *Grogan v. Garner*, 498 U.S. 279 (1991)). "[W]here the earlier . . .

judgment was rendered in a state court, it is the collateral estoppel law of that state that

determines the effect to be accorded the state court judgment." *Id.* As the Judgment here was

issued in Florida, this Court looks to Florida law to determine whether it has preclusive effect in

this adversary proceeding.

The elements of collateral estoppel under Florida law are that:

(1) the identical issue was presented in a prior proceeding;
(2) the issue was a critical and necessary part of the prior determination;
(3) there was a full and fair opportunity to litigate the issue;
(4) the parties to the prior action were identical to the parties of the current
    proceeding; and
(5) the issue was actually litigated.

*Marquardt v. State*, 156 So. 3d 464, 481 (Fla. 2015). With respect to the identity of parties,

collateral estoppel will apply "when identical parties or their privies have previously litigated the

same issue." *Id.* (citing *State v. McBride*, 848 So. 2d 287, 290-91 (Fla. 2003)).

The Defendant argues that collateral estoppel is inapplicable here because an identity of

parties is lacking.[4] The Defendant notes that the Plaintiffs appear in their personal capacity in

this action, but contends that the Estate—not the Plaintiffs—was the real party in interest in the

Florida Litigation. But the Court disagrees. The plain language of the Judgment makes clear

that the same parties in interest in the Florida Litigation are the Plaintiffs in the adversary

---

[4]      The Defendant does not challenge that the other four elements are satisfied. Given the findings and
conclusions in the Judgment, the Court finds the other four elements for collateral estoppel are easily met here.

proceeding before this Court.  The Plaintiffs and the Defendant here—David Acker, Karen

Acker and Mark Acker—are individually referred to as "DA," "KA," and "MA" respectively

throughout the Judgment.  *See* Judgment at 2.  The Estate of Stanley Acker is defined separately

in the Judgment as the "Estate."  *See id.*  The Florida Court specifically awarded damages "in

favor of KA and DA against MA . . . ."  *Id.* at 9.[5]  The damages are unequivocally awarded to the

Plaintiffs—no mention is made of the award being to the Estate or to Karen and David Acker

only in their capacity as fiduciaries or representatives of the Estate.[6]

The Defendant cites to *United Automobile Ins. Co. v. Millennium Radiology, LLC*, 337

So.3d 834, 837 (Fla. Dist. Ct. App. 3d. Dist. 2022), in support of his argument that under Florida

law, "[t]o be identical, parties must appear in the same capacity in each lawsuit.  Where someone

other than the party in question is the real party in interest, identity of parties is not present and

collateral estoppel may not be applied."  *Memorandum of Law of Defendant Mark Steven Acker*

*in Opposition to Plaintiffs' Motion for Partial Summary Judgment* at 4 [ECF No. 25] (the

"Defendant's Opposition").  But the *Millenium* case is factually distinct from the situation at

hand and does not change the result here.  In *Millenium*, a medical services provider—

Millennium Radiology—was the assignee of personal injury protection benefits for three

---

[5]      The Defendant points to language in the Judgment stating that "the Estate incurred substantial unnecessary attorneys' fees and costs, and suffered actual damages . . . ."  Judgment at 9.  But the Judgment goes on to state that these damages included, among other things, "[s]ignificant expenditure and waste of the personal assets of [the Plaintiffs] on attorney's fees and other costs and expenses to enforce the terms of the [Settlement Agreement], and to resist actions and conduct by [the Defendant] in contravention of [the Settlement Agreement]."  *Id.*

[6]      The Defendant also relies on certain statements made by the Plaintiffs before a Florida appellate court in their response to the Defendant's arguments in his appeal of the Judgment about the Estate having suffered damages. The Defendant asserts that these statements judicially estop the Plaintiffs from arguing that they, and not the Estate, suffered damages.  *See Memorandum of Law of Defendant Mark Steven Acker in Opposition to Plaintiffs' Motion for Partial Summary Judgment* at 6-7.  But the Defendant cannot collaterally attack the Judgment in this Court; the Judgment was affirmed on appeal and is a final order.  *See id.* at 7 (noting that "the Florida Fourth District Court of Appeal rejected Mark's appeal, in a *per curiam* affirmance.").  If the Defendant wishes to seek relief as to the Judgment, he must seek redress with the Florida courts.  In any event, the Defendant has not satisfied the requirements for judicial estoppel here based on these statements as this Court has not relied upon these statements in making any determinations in the bankruptcy case or this adversary proceeding.

individuals that had been injured in separate automobile accidents and were all covered by the

same insurance company, United Automobile Insurance. *See id.* at 835-37. In its role as

assignee, Millennium sued United for coverage of MRI testing that Millennium had performed

on the insureds. *See id.* In each of the cases, the trial court applied offensive collateral estoppel

to preclude United from challenging the reasonableness of the cost of the MRIs based on

findings in prior similar personal injury cases involving unrelated insureds in which Millenium

was assignee of personal injury protection benefits provided by United. *See id.* The trial court

found that Millennium, as assignee of each of the insureds, was the identical party in both the

previous and current litigations for purposes of collateral estoppel. *See id.* at 837. But the

appellate court reversed, finding that identity of parties was lacking for collateral estoppel

purposes because "[n]otwithstanding that Millennium provided all the medical services at issue,

in each of these first-party PIP cases . . . Millennium's standing is derived solely by virtue of

assignments received from different insureds of United Auto." *Id.* at 837 (finding that

"Millennium stands in the shoes of a *different* United Auto insured, each one involved in

a *different* accident. The real party in interest is Millennium as an assignee, not Millennium in

its individual capacity as the provider of the medical services for each insured.") (emphasis in

original). Thus, identity of parties was lacking in *Millenium* because Millennium was suing as

the assignee of completely distinct individuals involved in totally different accidents. No such

distinction exists here. The same underlying individuals—the Plaintiffs and the Defendant—are

parties in both the Florida Litigation and this adversary proceeding. Furthermore, the Judgment

of the Florida Court makes clear that the two Plaintiffs here suffered the damages in their individual capacities from the conduct of the Defendant.

But even if the Estate was the true party in interest to the Florida Litigation, the Plaintiffs were in privity with or were virtually represented by the Estate in the Florida Litigation such that collateral estoppel would nonetheless still apply to this adversary proceeding. Under Florida law, "[o]ne not a party to a suit is in privity with one who is where his interest in the action was such that he will be bound by the final judgment as if he were a party." *S.E. Fidelity Ins. Co. v. Rice*, 515 So. 2d 240, 242 (Fla. Dist. Ct. App. 4th Dist. 1987); *see also Marquardt*, 156 So. 3d at 481 (stating that collateral estoppel will apply "when identical parties or their privies have previously litigated the same issue."); *Stogniew v. McQueen*, 656 So. 2d 917, 920 (Fla. 1995) ("For one to be in privity with one who is a party to a lawsuit or for one to have been virtually represented by one who is a party to a lawsuit, one must have an interest in the action such that she will be bound by the final judgment as if she were a party.") (internal citation omitted); *Aerojet-General Corp. v. Askew*, 511 F.2d 710, 719 (5th Cir. 1975), *cert. denied*, 423 U.S. 908 (1975) ("A person may be bound by a judgment even though not a party if one of the parties to the suit is so closely aligned with his interests as to be his virtual representative.").

## C.  Nondischargeability

Having determined that collateral estoppel applies to the Judgment, the Court now turns to whether the Judgment satisfies the requirements for nondischargeability under the Bankruptcy Code. To preserve a debtor's right to a fresh start through the discharge of debts, the exceptions to discharge under Section 523(a) of the Bankruptcy Code are strictly construed in favor of the debtor and against the creditor. *Kuper v. Spar (In re Spar)*, 176 B.R. 321, 326 (Bankr. S.D.N.Y. 1994). The burden is on the creditor to show by a preponderance of the evidence that a debt falls

within the scope of Section 523(a).  *See Grogan*, 498 U.S. at 291.  But "such exceptions are to be construed in favor of the debtor only so far as reasonable." *Staten Island Sav. Bank v. Scarpinito (In re Scarpinito)*, 196 B.R. 257, 261 (Bankr. E.D.N.Y. 1996) (internal citations and quotations omitted).  "[W]here a plaintiff presents evidence sufficient to prove the non-dischargeability of the debt in question, the burden thereafter shifts to the debtor to provide evidence to refute plaintiff's prima facie case." *Id.*

    1.  <u>Willful and Malicious Injury</u>

Section 523(a)(6) of the Bankruptcy Code excepts a debt from discharge where it resulted from "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6).  A creditor must establish three elements for Section 523(a)(6) to apply: "first, that the debtor acted willfully; second, that the debtor acted maliciously; and third, that the debtor's willful and malicious actions caused injury to the creditor or the creditor's property." *Cocoletzi v. Orly (In re Orly)*, 2016 Bankr. LEXIS 2936, at *8-*9 (Bankr. S.D.N.Y. Aug. 10, 2008).  "[T]he terms 'willful' and 'malicious' are separate elements with distinct meanings and both must be satisfied by a preponderance of the evidence." *Id.* at *9 (internal citations and quotations omitted).  The Court will address each of these three elements separately.

    a.  *Willfulness*

"An act is willful when the debtor intends to inflict the injury or knew that the injury was substantially certain to result." *Citik Ka Wah Bank Ltd. N.Y. Branch v. Wong (In re Wong)*, 291 B.R. 266, 280 (Bankr. S.D.N.Y. 2003) (internal citations omitted).  Willfulness under Section 523(a)(6) therefore requires "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury, and includes conduct that the actor is substantially certain will

cause injury." *Weiss v. Alicea (In re Alicea)*, 230 B.R. 492, 507 (Bankr. S.D.N.Y. 1999)

(internal citations and quotations omitted). While there is a split among Circuit courts as to

whether substantial certainty on the part of the actor is judged subjectively or objectively, "courts

within this Circuit have largely applied the subjective standard." *Margulies v. Hough (In re

Margulies)*, 517 B.R. 441, 452-53 (S.D.N.Y. 2014) (citing *Citik Ka Wah Bank* , 291 B.R. at 280;

*Aldus Green Co. v. Mitchell (In re Mitchell)*, 227 B.R. 45, 51 (Bankr. S.D.N.Y. 1998)). A court

must therefore examine whether the actor himself was substantially certain his actions would

cause injury.

The Judgment establishes the Defendant acted willfully here. The findings of fact and

the conclusions of law of the Florida Court establish that the Defendant at a minimum knew that

his conduct was substantially certain to cause an injury, and in fact acted with the intent to do so.

This is demonstrated in various aspects of the Judgment. For instance, the findings of fact state

that the Defendant engaged in "unilateral, intentional and substantial interference with the IRS

regarding [a] pending audit" relating to the Estate, in violation of the Settlement Agreement.

Judgment at 4. Additionally, Defendant continued to pursue claims against the Plaintiffs that he

had expressly released in the Settlement Agreement, with the Florida Court noting that he

breached his obligations under the Settlement Agreement "at every turn." *Id.* at 3-4.[7] The

Judgment's conclusions of law state that the evidence "showed . . . a crusade by [Defendant] to

ruin his siblings while wasting the estate assets in the process." *Id.* at 7. Indeed, the Florida

Court also credited the testimony of the expert witness that the Defendant's behavior was "due to

pure animus." Judgment at 4. The Florida Court also noted that the Defendant had, among other

---

[7]    The findings of fact in the Judgment note that the Settlement Agreement specifically provided that the
parties "have fully discussed this agreement with their attorneys with respect to the meaning and effect of the
provisions of this agreement and have voluntarily chosen to sign this agreement, fully understand its content,
meaning, legal effect and consequences, free of any duress or coercion." Judgment at 3.

things, repeatedly contacted the IRS to make "false allegations of a conspiracy by [Plaintiffs] of

fraud," which delayed resolution of the Estate's issues with the IRS. *Id.* at 7.

Importantly, the conclusions of law in the Judgment also held that the Defendant's

actions met the standard for application of the "Inequitable Conduct Doctrine," which "permits

an award of attorneys' fees and costs against a party personally where they acted egregiously, in

bad faith, vexatiously, wantonly, or for oppressive reasons." Judgment at 8 (citing *Bitterman v.

Bitterman*, 714 So. 2d 356 (Fla. 1998)).[8]  The Florida Court specifically found that the

Defendant's "breaches of the [Settlement Agreement], his breaches of fiduciary duties, and other

actions were egregious, in bad faith, vexatious, wanton, or oppressive." Judgment at 8.  The

Court finds that the state of mind for all these actions is more than sufficient to rise to the level of

willfulness under Section 523(a)(6).[9]  *See, e g., Ball v. A.O. Smith Corp.*, 451 F.3d 66, 70-71 (2d

Cir. 2006).  Similar to the circumstances here, the Court in *Ball* found that sanctions against an

attorney in the form of defense costs were nondischargeable under Section 523(a)(6) because his

conduct had been properly characterized as willful and malicious.  *See id.*  The *Ball* court noted

that while the prior court decision relied on for collateral estoppel effect did not used the terms

---

[8]      Under Florida law, the Inequitable Conduct Doctrine "'is reserved for those extreme cases where a party
acts in bad faith, vexatiously, wantonly, or for oppressive reasons.'"  *Hicks v. Hicks*, 284 So. 3d 576, 578-579 (Fla.
Dist. Ct. App. 4th Dist. 2019) (quoting *Moakley v. Smallwood*, 826 So. 2d 221, 224 (Fla. 2002)).  "[A]ny such award
by the trial court must be based upon an express finding of bad faith conduct and must be supported by detailed
factual findings describing the specific acts of bad faith conduct that resulted in the unnecessary incurrence of
attorneys' fees." *Id.*  "Although the magic words 'bad faith' are not necessary, the trial court must use equivalent
language to describe the sanctionable conduct." *Id.* at 579 (internal citations and quotations omitted).

[9]      A quick review of the definitions for these terms helps prove the point.  For instance, "egregious" is
defined as "outstandingly bad; shocking."  Oxford Dictionary of English, Oxford University Press (3d ed. 2010).
"Bad faith" is defined as "[d]ishonesty of belief, purpose, or motive."  Black's Law Dictionary (11th ed. 2019).
"Vexatious" is defined as "denoting an action or the bringer of an action that is brought without sufficient grounds
for winning, purely to cause annoyance to the defendant."  Oxford Dictionaries, Oxford University Press, Web,
https://premium.oxforddictionaries.com/us/definition/american_english/vexatious, last visited 17 November 2023.
"Wanton" is defined as "unreasonably or maliciously risking harm while being utterly indifferent to the
consequences."  Black's Law Dictionary (11th ed. 2019).  "Oppressive" is defined as "unjustly inflicting hardship
and constraint, especially on a minority or other subordinate group."  Oxford Dictionaries, Oxford University Press,
Web, https://premium.oxforddictionaries.com/us/definition/american_english/oppressive, last visited 17 November
2023.

'malicious' or 'malice,' the prior decision to award sanctions was made under 28 U.S.C. § 1927, which requires findings that are the equivalent of findings of malice.[10]

### b. Malice

As to the second element, an action is malicious when it is "wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will." *Navistar Fin. Corp. v. Stelluti (In re Stelluti)*, 94 F.3d 84, 87 (2d Cir. 1996). The finding of malice is a fact-specific determination that is made on a case-by-case basis. *See Plaza v. Heilbron (In re Heilbron)*, 2023 Bankr. LEXIS 2394, at *41 (Bankr. E.D.N.Y. Sept. 28, 2023). "A court should look to the totality of the circumstances to determine malice." *Forrest v. Bressler* (*In re Bressler*), 387 B.R. 446, 455 (Bankr. S.D.N.Y. 2008). Malice may be actual but can also be "constructive or implied . . . [which] may be demonstrated by the acts and conduct of the debtor in the context of [the] surrounding circumstances." *In re Stelluit*, 94 F.3d at 88 (internal citations and quotations omitted). For instance, "a court may find malice when anyone of reasonable intelligence knows that the act in question is contrary to commonly accepted duties in the ordinary relationships among people, and injurious to another." *Yash Raj Films (USA) Inc. v. Akhtar* (*In re Akhtar*), 368 B.R. 120, 132 (Bankr. E.D.N.Y. 2007) (internal citations and quotations omitted); *see also Murphy v. Snyder (In re Snyder)*, 939 F.3d 92, 105 (2d Cir. 2019) (stating that malice "will be found where the debtor has breached a duty to the plaintiff founded in contract, statute or tort law . . . .") (internal citations and quotations omitted). Malice may also "be inferred or imputed, for example, from the fact that the debtor's conduct giving rise to liability has no potential for economic gain or other benefit to the debtor, from which one could only conclude that the

---

[10]     Section § 1927 "provides that any attorney who so multiplies the proceedings in any case *unreasonably and vexatiously* may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *Ball*, 451 F.3d at 69 n.1 (emphasis added).

debtor's motivation must have been to inflict harm upon the creditor." *In re Luppino*, 221 B.R. 693, 700 (Bankr. S.D.N.Y. 1998).

The findings and conclusions in the Judgment establish that the Defendant acted with malice here. A person of reasonable intelligence would clearly know that the Defendant's actions—as an Estate fiduciary and as a party who had knowingly entered into the Settlement Agreement—were "contrary to commonly accepted duties in the ordinary relationships among people, and injurious to" the Plaintiffs, and that his behavior breached his duties to the Plaintiffs under Florida law. *In re Akhtar*, 368 B.R. at 132; *see In re Snyder*, 939 F.3d at 105. For example, the Florida Court found that the Defendant "attempted to maneuver specifically against decisions established by majority vote, which required the Estate to incur extensive legal fees to defend against [his] conduct." Judgment at 4. The court concluded that this conduct was "directly at odds with his fiduciary duties to the Estate, his co-fiduciaries, and his co-beneficiaries." *Id.* The Florida Court also found that he "failed to participate regularly in Estate fiduciary meetings" and that when he did attend, "he was disruptive . . . , ignored requests to come to order, . . . interrupt[ed] others and would talk over the person speaking." *Id.* The Florida Court noted that his failures to participate in the performance of the co-fiduciary functions were a breach of Section 736.0703(3) of the Florida Statutes. *Id.*

As for the Settlement Agreement, the Florida Court found that the Defendant breached his obligations "[a]t every turn." Judgment at 3. For instance, the Florida Court noted that the Defendant had failed to abide by the Settlement Agreement by taking the following actions, among other things:

> a) Interference with the IRS and its Audit, including but not limited to seeking to have a *higher tax* burden imposed upon the Estate, which led to the imposition

of significant additional and unnecessary legal and other professional fees
upon the Estate;

b) MA's interference in the Accounting Proceeding;

c) Repeatedly attempting to unilaterally remove the court-appointed fiduciary;

d) Objecting to, and/or blocking payment of administrative expenses, including
professional foes incurred in connection 'With the administration of the
Estate;

e) Refusal to abide by the terms of the 2010 SA requiring that all future
accountings be waived;

f) Contacting the IRS and making false allegations of a conspiracy;

g) Failing to abide by the duties imposed upon fiduciaries, such as MA, duties to
   (i)  carry out the decedent's intent;
   (ii) to administer and close the estate in the most efficient manner possible;
   (iii) to respect and abide, and not hinder, the majority decisions made by his
        co-fiduciaries; and
   (iv) to act, at all times, in the best interests of the Estate; and

h) By acting in his own personal interests instead of acting in the best interests of
the Estate.

Judgment at 7 (emphasis in original).  Specifically as to the tax issues, the Defendant agreed

under the Settlement Agreement with respect to "himself and those acting under his direction,

not to interfere or thwart the pending [IRS] audit, or appellate proceedings, or take any steps that

might cause the imposition of any tax or penalties that would not otherwise have been imposed

upon the Estate."  Judgment at 2.  Despite this, the Florida Court found that the Defendant

"interfered with and thwarted the pending IRS audit, raising claims that he had specifically

released, including actions that might have caused imposition of taxes or penalties that might not

otherwise have been imposed on the Estate . . . ."  Judgment at 3.  The Florida Court noted that

the Defendant "had unilateral, intentional and substantial interference with the IRS regarding the

pending audit in violation of the [Settlement Agreement]" and that he "also filed lawsuits which

delayed the resolution of issues under consideration by the IRS."  Judgment at 4.[11]  And with

---

[11]    To put these actions in context, an expert retained in the Florida Litigation noted, among other things, that
"[o]nce the [Settlement Agreement] was executed, there should not have been proactive and voluntary contact with
the IRS from Mark Acker.  A fiduciary is required to comply with the fiduciary requirements of the trust code and of
the probate code and MA took steps to increase potential taxes, penalties and interest is a breach of fiduciary duty.
Mark Acker's communication with the IRS was not in the best interest of the Estate."  Judgment at 5.

respect to the Accounting Proceeding, the Defendant agreed under the Settlement Agreement to

"withdraw with prejudice the objections that he ha[d] filed in the Accounting Proceeding, and

that [the Plaintiffs'] counsel shall take the lead defense position in the Accounting Proceeding."

Judgment at 3 (internal quotations omitted).  Despite this, the Florida Court noted that

> [i]n the New York litigation, Mark Acker participated in the proceeding and his
> actions were directly adverse to the interest of the Estate and Trust because he
> provided information concerning the assets of the Trust creating an issue as to
> whether certain prior representations made by Estate and Trust counsel were false.
> Thus, [sic] advocating against the Estate and Trust and in favor of Arlene Acker.
> [Additionally,] Mark Acker gave privileged information of the Estate and Trust to
> Arlene Acker's counsel in direct opposition to the interest of the Estate and Trust
> This was a violation of his duties as a fiduciary and adverse to the interests of the
> Estate and Trust.

> Judgment at 5.

As to the Defendant's actions as a fiduciary, the Florida Court also concluded that the

Defendant repeatedly breached his fiduciary duties to the Plaintiffs and that "from his actions it

is clear he did not adhere to Florida law regarding personal representatives and trustees."  *See*

Judgment at 3, 6, 8.  The Florida Court also found that the Defendant

> acted in contravention of his fiduciary duties by: (a) litigating and advancing
> claims that were released in the [Settlement Agreement], both in and out of Court;
> (b) supporting Arlene Acker and her counsel in the Accounting Action by
> appearing in person in that Action over at least a five (5) year period as a party,
> regularly taking positions in opposition to the Estate's legal position; (c)
> providing her counsel and the New York court with privileged and confidential
> Estate-related financial information; (d) providing inaccurate and/or misleading
> information regarding the Estate's financial status to the New York court, leading
> to an Order requiring that the Marital Trust be funded immediately and
> subsequently reversed on appeal; (e) instituting litigation, including the
> Declaratory Action filed in Florida, as to matters that were specifically released as
> a part of the [Settlement Agreement] or that lacked merit; (f) interfered with and
> thwarted the pending IRS audit, raising claims that he had specifically released,
> including actions that might have caused imposition of taxes or penalties that
> might not otherwise have been imposed on the Estate; and (g) repeatedly
> attempted to improperly remove the Court-appointed third-party co-fiduciary.

Judgment at 3.  The Florida Court also stated that the Defendant "simultaneously (a) re-litigated matters and issues that he had released, (b) maintained a position . . . adverse to the Estate in the Accounting Action and (c) demanded that the Marital Trust be funded immediately, while making claims of IRS tax fraud by the Estate."  Judgment at 3-4.  The Florida Court also found that the Defendant regularly took positions that were adverse and in opposition to the Estate's legal position in the Accounting Action that involved the decedent's wife and provided her counsel and the court handling the action with privileged and confidential Estate-related financial information and also provided inaccurate and/or misleading information regarding the Estate's financial status to the court.  Judgment at 3-4.  The Florida Court concluded that the Defendant's conduct was "directly at odds with his fiduciary duties to the Estate, his co-fiduciaries, and his co-beneficiaries."  Judgment at 4 (also citing expert's conclusion that the Defendant's "behavior toward the Estate was due to "pure animus").[12]

Given this avalanche of findings by the Florida Court, the Court finds malice is established from the Defendant's repeated actions in violation of the Settlement Agreement and to negatively impact or delay the finality of the Estate.

---

[12]    The expert testified that the Defendant "participated in the proceeding and his actions were directly adverse to the interest of the Estate and Trust because he provided information concerning the assets of the Trust creating an issue as to whether certain prior representations made by the Estate and Trust counsel were false.  Thus advocating [sic] against the Estate and Trust and in favor of" the decedent's wife.  Judgment at 5.  He also "gave privileged information of the Estate and Trust to  [opposing] counsel in direct opposition to the interests of the Estate and Trust.  This was a violation of his duties as a fiduciary and adverse to the interests of the Estate and Trust."  Judgment at 3-4.

c.  *Injury*

The third element requires that the debtor's actions caused injury to the plaintiff or the plaintiff's property.  The term "injury" is not defined in the Bankruptcy Code.  *In re Heilbron*, 2023 Bankr. LEXIS 2394, *43-44.  "Courts give a plain meaning to the term 'injury' when considering nondischargeability claims under Section 523(a)(6)."  *Id.*  The Plaintiffs here have clearly suffered an injury.[13]  As noted above, the Florida Court found that the Defendant's actions caused harm to the Plaintiffs directly and also harmed them as beneficiaries of the Estate by delaying the administration of the Estate incurring unnecessary costs and expenses.  *See id.* The Florida Court found that the Defendant's material breaches of the Settlement Agreement and breaches of his fiduciary duties resulted in "substantial unnecessary attorneys' fees and costs" and "actual damages," including, but not limited to:

> a) Significant expenditure and waste of Estate Assets on attorney's fees and other costs and expenses to enforce the terms of the [Settlement Agreement], and to resist actions and conduct by [the Defendant] in contravention of [the Settlement Agreement]; and

> b) Significant expenditure and waste of the personal assets of [the Plaintiffs] on attorney's fees and other costs and expenses to enforce the terms of the [Settlement Agreement], and to resist actions and conduct by [the Defendant] in contravention of [the Settlement Agreement].

Judgment at 8-9.

2.  <u>Fraud or Defalcation While Acting in a Fiduciary Capacity</u>

Section 523(a)(4) of the Bankruptcy Code excepts from discharge a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny . . . ."  11 U.S.C. § 523(a)(4).  It is clear from the Judgment that the Defendant was acting in a fiduciary capacity

---

[13]      "Injury" is defined as "an instance of being injured" while "injured" is in turn defined as "harmed, damaged or impaired."  Oxford Dictionary of English, Oxford University Press (3d ed. 2010).

and that the actions at issue were also taken by the Defendant in his capacity as co-personal

representative of the Estate.[14]   But less clear is whether, based on the Judgment alone, the Court

can find that the Defendant's acts constituted fraud or defalcation as required by Section

523(a)(4).   *See Zohlman*, 226 B.R. at 775.   For instance, defalcation under Section 523(a)(4) is a

"misappropriation or failure to account," *Denton v. Hyman* (*In re Hyman*), 502 F.3d 61, 68 (2d

Cir. 2007), but the Plaintiffs do not point to language in the Judgment that shows the Defendant

misappropriated funds from the Estate or the Trust or failed to account with respect to his duties

as the fiduciary of the Estate or the Trust.   And with respect to fraud, "[t]o find a debt non-

dischargeable under Section 523(a)(4), fraud requires intentional deceit, and is thus akin to actual

fraud." *Mirarchi v. Nofer (In re Nofer)*, 514 B.R. 346, 355 (Bankr. E.D.N.Y. 2014) (internal

citations and quotations omitted).   In bankruptcy, actual fraud requires proof of the "five fingers"

of common law fraud:

> (1) that the defendant made a false representation,
> (2) the defendant knew it was false at the time it was made,
> (3) that the defendant made the representation with the intention of deceiving the
> plaintiff,
> (4) that the plaintiff justifiably relied on the representation, and
> (5) the plaintiff sustained damages that were proximately caused by the false
> material representation.

*Id*. at 355-56 (internal citations omitted).   But the Plaintiffs do not point to language in the

Judgment showing that the Defendant made false representations with the intention of directly

deceiving the Plaintiffs or that the Plaintiffs themselves relied on representations made by the

---

[14]      The Florida Court explicitly stated in the findings of fact that the Defendant was a co-personal
representatives of the Estate, and in that capacity had "fiduciary duties to [his] co-fiduciaries and to the beneficiaries
of the Estate." Judgment at 2.  Additionally, among other things, the expert witness testified that with respect to two
real properties of the Estate that the Defendant's behavior was "in violation of his duties as a fiduciary.  He
communicated with prospective purchasers and made false claims regarding environmental concerns. These claims
made by [the Defendant] created additional delays, and caused the Estate and Trust to incur further unnecessary
costs and expenses."  Judgment at 5.

Defendant, as opposed to reliance by other parties such as the IRS or the courts involved with the Estate-related litigation.

Given that the Court has already found the Plaintiffs' claim nondischargeable due to willful and malicious injury under Section 523(a)(6) of the Bankruptcy Code, it is unclear whether the Plaintiffs wish to proceed with respect to Section 523(a)(4). The Plaintiffs should file a letter on the Case Management/Electronic Case Filing docket within fourteen (14) days from the issuance of this *Memorandum of Decision* to inform the Court as to whether they wish to supplement the record to further pursue summary judgment on the second cause of action in the Complaint.

## CONCLUSION

For the reasons stated above, the Court grants summary judgment on the first cause of action in the Complaint under Section 523(a)(6) of the Bankruptcy Code and denies summary judgment without prejudice with respect to the second cause of action under Section 523(a)(4) of the Bankruptcy Code. The Plaintiffs should settle an order on fourteen (14) days' notice. The proposed order must be submitted by filing a notice of the proposed order on the Case Management/Electronic Case Filing docket, with a copy of the proposed order attached as an exhibit to the notice. A copy of the notice and proposed order shall also be served upon both the Defendant and counsel to the Defendant.

Dated: New York, New York
        October 11, 2024


                                        */s/ Sean H. Lane*
                                        UNITED STATES BANKRUPTCY JUDGE